ROBERT J. HACKETT *v.* CITY OF NEW BRITAIN ET AL.
(2367)

DANNEHY, C.P.J., TESTO and HULL, Js.

Argued April 11—decision released June 26, 1984

*Harold J. Geragosian,* for the appellant (plaintiff).
*Joseph E. Skelly, Jr.,* for the appellees (defendants).

HULL, J. The plaintiff appeals[1] from the denial of his petition for an order of mandamus by which the plaintiff sought to compel the defendants to continue undiminished payment of his pension benefits. The defendants are the city of New Britain and the board of trustees of the New Britain firemen's pension fund.

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

The plaintiff, Robert J. Hackett, was appointed to the position of substitute fireman in the New Britain fire department. Approximately one year later, on November 20, 1950, he was made a full-time fireman. He then became a lieutenant in the fire department on May 24, 1968. After obtaining the highest mark on the captain's examination, Hackett was promoted to captain on May 13, 1974. He thereafter obtained the highest score on the examination for promotion to deputy chief and was promoted to that rank on September 18, 1977.

The trial court found that Hackett had paid a certain sum of money to a third party to ensure that he attained the highest rank on the promotional examinations for the positions of captain and deputy chief. The court stated that "[t]his litigation became necessary solely as a result of the plaintiff's criminal acts in purchasing his last two promotions." In addition, the court found that Hackett had participated in the "fixing" and "attempted fixing" of twelve examinations for other members of the department from as early as 1972.

Pursuant to the charter and regulations of the city of New Britain relative to the firemen's pension fund, the plaintiff contributed 5 percent of his weekly salary to the retirement fund until 1968, when he became a lieutenant, after which the city began to match his 5 percent contribution to the retirement fund. On April 29, 1980, the defendant board of trustees granted the plaintiff a pension in the amount of $13,250.76 per year based upon his salary after achieving the position of deputy fire chief. The board stipulated, however, that the pension benefits were subject to review in the event that subsequent evidence established that the position of deputy chief had been illegally obtained.

The plaintiff was subsequently convicted of numerous felonies for his role in "fixing" the results of certain promotional examinations. After a hearing on April 15, 1981, the board found that Hackett had illegally obtained both the rank of captain and deputy chief. The board, therefore, reduced the plaintiff's pension by the amount of $5483.97 per year.

The plaintiff filed a petition for an order of mandamus to compel the defendants to continue to pay to the plaintiff pension benefits in the original amount prior to the reduction. The court denied the relief and rendered judgment for the defendants. We agree.

The plaintiff, in essence, seeks to compel the defendant to grant him pension benefits based upon the salary level for the position of deputy chief, a position the plaintiff attained as a direct result of his own fraudulent conduct.

A writ of mandamus is an extraordinary remedy. *McAllister* v. *Nichols,* 193 Conn. 168, 171, 474 A.2d 792 (1984). It may issue only when: (1) the law imposes upon the party against whom the writ would run a duty the performance of which is mandatory and not discretionary; (2) the party applying for the writ has a clear legal right to have the duty performed; and (3) there is no other specific adequate remedy. *Bahramian* v. *Papandrea,* 184 Conn. 1, 3, 440 A.2d 777 (1981).

In this case, the plaintiff has not satisfied the second prong of the test, for he has not established a clear legal right to pension benefits in the original amount of the award. There is clear and convincing proof of the plaintiff's fraudulent conduct directly relating to his attainment of the positions of captain and deputy chief. See *Fattibene* v. *Fattibene,* 183 Conn. 433, 438, 441 A.2d 3 (1981). The original amount of the pension benefits was based upon the salary level for the position which the plaintiff attained as a direct result of his

fraudulent conduct. A person who obtains his employment by fraud is not entitled to compensation at the contract rate, although he may be entitled to the reasonable value of his services, and, furthermore, if a person induces his employer through fraud to enter into a transaction, he is not entitled to any compensation for his services in connection with it. 2 Restatement (Second), Agency § 469, comment c; see *Heyman* v. *Kline,* 344 F. Sup. 1110, 1113–14 (D. Conn. 1970), rev'd on other grounds, 456 F.2d 123 (2d Cir. 1972). Proof of fraud in the inducement to contract allows the defrauded party various remedies including rescission; *Duksa* v. *Middletown,* 173 Conn. 124, 129, 376 A.2d 1099 (1977); restitution; see 2 Restatement (Second), Agency § 403; or damages. *A. Sangivanni & Sons* v. *F. M. Floryan & Co.,* 158 Conn. 467, 472, 262 A.2d 159 (1969).

Since mandamus neither gives nor defines a right which one does not already have, it cannot, and does not, act upon a doubtful or contested right. *McAllister* v. *Nichols,* supra, 171–72; *Gerrity* v. *Bisciglia,* 178 Conn. 235, 238–39, 423 A.2d 871 (1979). There is a great deal of doubt as to whether the plaintiff has a clear and legal right to the original award in light of these circumstances. The defendant contests this claim of right and has, in effect, rescinded its prior award due to the discovery of the fraud. We conclude that the plaintiff failed to establish a clear legal right to benefits in the amount of the original award. The plaintiff has failed to satisfy the second prong of the test for the issuance of a mandamus and, therefore, the court did not err in denying the plaintiff's request.

Mandamus, although it is a legal remedy, is not awarded as a matter of right, but is within the exercise of the sound discretion of the court; *Sullivan* v. *Morgan,* 155 Conn. 630, 635, 236 A.2d 906 (1967); and

its allowance is controlled by equitable principles. Id.; *United States* v. *Dern,* 289 U.S 352, 359, 53 S. Ct. 614, 77 L. Ed. 1250 (1933). While a writ of mandamus may not issue unless the three prong test is satisfied, satisfaction of the test does not give rise to an automatic obligation on the part of the court to issue the requested writ of mandamus. The Supreme Court of Connecticut has stated that "[i]f the right to the issuance of the writ is 'asserted contrary to the public interest, the court might refuse its aid in mandamus proceedings.' " *Sullivan* v. *Morgan,* supra, 635. There are, therefore, circumstances where a court may, even where the test has been satisfied, deny an application for a writ of mandamus.

In the present case, even if the plaintiff had established a clear legal right to undiminished payment of the original pension award, the extraordinary circumstances of this case support the court's exercise of discretion in denying a writ of mandamus. Because the writ is not issued as a matter of right, a court may, in the exercise of its sound discretion, take into account considerations other than the legal right asserted. *State ex rel. Costelo* v. *Middlesex Banking Co.,* 87 Conn. 483, 487, 88 A. 861 (1913). "The writ of mandamus is not always demandable as an absolute right, and whether it shall be granted or not frequently rests in the discretion of the court. . . . The writ will be granted to prevent a failure of justice, *but never to promote manifest injustice.* It is a remedial process and may be issued to remedy a wrong, not to promote one, to compel the discharge of a duty which ought to be performed, but not to compel the performance of an act which will work a public and private mischief, or to compel a compliance with the strict letter of the law in disregard of its spirit or in aid of a palpable fraud. The relator must come into court with clean hands." (Emphasis added). Id., 487–88.

The trial court, in taking into account matters other than the legal right asserted, found that the equitable principle enunciated within the clean hands doctrine applied in this case and that this doctrine served as a bar to the plaintiff's claim. We do not find that, under the circumstances of this case, the trial court abused its discretion in denying the writ of mandamus.[2]

It is unnecessary, in light of our conclusions above, to address the plaintiff's claims concerning the board's lack of authority to reduce the amount of the pension benefits.

There is no error.

In this opinion the other judges concurred.

---

[2] Courts of other jurisdictions have reached similar conclusions where an employee's fraud or misconduct was found to have a direct bearing on that party's right to, or interest in, employee benefits. See *McIntyre* v. *Retirement Board of San Francisco,* 42 Cal. App. 2d 734, 109 P.2d 962 (1941); *State* v. *Booker,* 146 Fla. 402, 1 So. 2d 167 (1941); *Bucher* v. *Oloer,* 204 Md. 568, 105 A.2d 480 (1954); *Van Coppenolle* v. *Detroit,* 313 Mich. 580, 21 N.W.2d 903 (1946); *Hadden* v. *Consolidated Edison Co.,* 45 N.Y.2d 466, 410 N.Y.S.2d 274, 382 N.E.2d 1136 (1978).